H. H. WEFEL, JR., IN HIS OWN RIGHT AND AS TRUSTEE, *Appellant*, v. WILLIAMS & PRITCHETT, *Appellees*.

1. Under a deed conveying the timber, but reserving and excepting therefrom all turpentine rights, the grantors surrender and abandon the lands to the grantees for the purposes of the grant, at certain periods; the right to turpentine continues until the grantees begin the cutting, and an injunction against turpentining will not be granted the millman, where it is not alleged that the grantors are interfering with his right to enter upon the lands and cut the trees under the terms of the contract.

2. When both complainants and defendants have large equities an injunction may be refused, unless there be an offer to protect the defendants.

This case was decided by Division A.

Appeal from the Circuit Court for Calhoun County.

The facts in the case are stated in the opinion of the court.

*F. T. Myers*, for Appellant;

*W. H. Price* and *Calhoun & Campbell,* for Appellees.

COCKRELL, J.—This appeal involves the proper construction of a timber lease executed in 1903 by Carr & Meadows to the Loxley Lumber Company, the interest of the latter being now represented by the appellant while that of the former has passed to the appellees.

By deed Carr & Meadows sold to the Lumber Company "all the timber of whatsoever kind standing or being upon described lands in Calhoun county, except 400 cypress logs now deadened," together with full right of entry for eight years, all timber remaining upon the lands thereafter to revert to Carr & Meadows or assigns. The said grantors reserve and except for themselves, their heirs and assigns, the right to turpentine the pine timber trees, upon said land and to do all things necessary and convenient for the operation of a turpentine business thereon, or for the removal of the turpentine products therefrom, but it is understood that the said grantors shall surrender and abandon to the grantee its successors, and abandon to the grantee its successors, and assigns the said lands for the purposes of this grant, at the rate of three thousand (3000) acres upon the delivery of this deed two thousand (2000) acres on January 1st, 1904, three thousand (3000) acres on January 1st, 1905, three thousand (3000) acres on January 1st, 1906, and the balance about one thousand acres on January 1-1907.

It is understood that the grantees having once begun to cut the pine trees upon a quarter section, shall cut down and remove all the saw logs on said quarter section before going upon another and the failure so to do shall give the grantors a right to stop further cutting until this provision is complied with."

The Loxley Lumber Company after paying the consideration and cutting but little timber became embar-

rassed and finally bankrupt and the appellant having pur-
chased its assets including this lease in 1907 demanded
that the appellees cease turpentining the lands, claiming
that on January 1, 1907, the reserved right to turpentine
ceased; that the turpentining lessened materially the
value of the timber. The bill prayed for an accounting,
an injunction and other relief. The injunction was denied
and the bill dismissed upon demurrer sustained.

The question presented is not free from difficulty. The
bill does not allege any obstruction upon the part of the
owners of the land to the full enjoyment of the lessees to
enter upon the land and to cut the trees as the lease pro-
vides or complain of any other act than the boxing and
scraping of the pine trees. In the paragraph containing
the reservation or exception as to turpentine rights and
privileges, it is "understood" that from time to time there
should be a surrender and abandonment for the purpose
of the grant of certain numbers of acres, not otherwise
designated, the whole however to be so surrendered and
abandoned for such purposes by January, 1907, and in
the succeeding paragraph it is again understood that the
cutting should be not general but quarter section by
quarter section.

It is possible that the grantors intended only to protect
the right to scrape the boxes already cut, but we can
gather no such restrictive intent from the language of the
instrument and the allegations of the bill do not aid us
to this construction. On the contrary it would seem that
the full turpentine privilege was excepted from the grant
subject only to be defeated when under the terms of the
lease the ax be in fact laid upon the tree. The owner
of the land and the turpentine privilege runs the risk of
losing the full fruits of his boxes should the conditional
owner of the timber comply with the condition, but until
that is done, he is not liable to the lessee in the absence

of a showing of waste or destruction outside his privilege.

The limitations of time do not appear to be upon the right to turpentine but a period before which the right to enter and cut for milling purposes does not begin. The words "surrender and abandon" while strong are yet restricted by the qualifying words "for the purposes of this grant" that is to the extent only of enabling the grantee to enjoy the privilege for a limited time of entering and cutting the timber, provided it be done according to the conditions of the contract.

In placing this construction upon the contract we do not feel that we are violating the canon that private grants are construed against the grantor; the inference in behalf of the grantee from the language used is too straight and strained to justify the application of the rule.

Should, however, we be mistaken as to this construction, there yet remain difficulties in the bill. Should the doubt so predominate as to favor the grantee, there would be still large equities in the grantor. The probabilities of large reversionary interests in the owner of the soil from failure of the millman to cut a considerable portion of the trees upon the vast tract within the now very limited life of the contract, and the absence from the bill of any showing that the complaining grantee contemplated within any definite time the cutting of the trees, or an offer to protect them from dangers from fire should they be entirely abandoned in their present state of exuding turpentine, might well make a court of equity hesitate to grand the relief prayed.

Upon the whole case we cannot say that the court erred and the decree is affirmed.

WHITFIELD, C. J., and SHACKLEFORD, J., concur.

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.

### REHEARING.

COCKRELL, J.—Upon petition for rehearing it is suggested that the bill prays for specific performance as to delivery of the land and that an unconditional affirmance might be *res adjudicata* against that right. As stated in the main opinion we do not so read the bill. On the contrary, we understand from it that the owners will yield possession of any and every portion wherein the appellant is prepared to begin cutting.

Out of abundant caution, however, the affirmance will be modified so as to read "without prejudice to the assertion by the appellant in any other legal or equitable proceeding, of his right to cut and remove the timber from said land under the terms of the contract;" and upon such modification, the rehearing is denied.