SOUTHERN LUMBER CO. v. LONG.

(Circuit Court, N. D. Florida.   October 8, 1910.)

Logs and Logging (§ 3*)—Right to Cut and Remove Timber — Construction of Contract.

A contract for the sale of all the timber of whatever kind, with a specified exception, on a large tract of land, with the right of entry to remove it for eight years, reserving to the grantor the right to turpentine the pine trees, surrendering a certain number of acres to the grantee each year, and further providing that the grantee "having once begun to cut the pine trees on a quarter section shall cut down and remove all the saw logs upon said quarter section before going upon another quarter section," with the right in the grantor to "stop further cutting until this provision is complied with," operated as a conveyance of a present estate in all the timber on the land, defeasible as to all standing at the expiration of the eight years, and the fact that the grantee had entered upon and cut the pine trees on a quarter section and passed to another did not exhaust his right to again enter thereon to cut other timber.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

In Equity.   Suit by the Southern Lumber Company against J. C. Long.   On motions to modify preliminary restraining order.   Order modified.

Calhoun & Campbell and Blount, Blount & Carter, for plaintiff.
Price & Lewis and Reeves & Watson, for defendant.

SHEPPARD, District Judge.   The Southern Lumber Company, complainant, a corporation under the laws of Georgia, brought its bill in this court against J. C. Long, a citizen of the state of Florida, alleging that it was the owner of a large tract of timber land in Calhoun county, Fla., deraigning its title from Carr & Meadows, prior owners of the land, who, as will later appear, were the source also of defendant's title or lease to the timber on the same land.

The claim of the plaintiff disclosed by the bill is that the defendant exhausted his rights to log the land, that he had exercised all his privileges under the terms of the lease by having once entered upon the land and cut and removed the saw logs therefrom.   A temporary restraining order was granted as prayed against the defendant July 30, 1910.   The cause is now again before the court upon motions of both parties to modify the preliminary restraining order heretofore granted. Complainant desires the injunction enlarged to prevent the cutting and removing of any logs or timber from any of the land in question.   The defendant seeks to modify the order so as to permit the cutting and removal from the land of any timber or wood except pine saw logs.

The rights of the parties involve the construction of a grant or lease of the timber on the land from Carr & Meadows to the Loxley Lumber Company, lumber manufacturers, who was the predecessor in title of the defendant here.

Omitting the description of the land and formal parts, the deed from Carr & Meadows to the lumber company by which the defendant derives his rights in the premises is as follows:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Carr & Meadows " * * * do bargain, sell, convey, and grant unto the Loxley Lumber Company, its successor and assigns, all the timber, of whatsoever kind, standing or being upon the following described lands in Calhoun county, state of Florida, except 400 cypress trees, now deadened, to wit: * * *

"Together with the right of said company by itself, its employés and servants, of egress and ingress into and from said lands for the purpose of cutting, hauling and removing said timber, and with the privilege of constructing and maintaining and operating railroads, log roads, ditches, and the doing of all other things necessary or convenient in and about said business. Said right of entry to continue for a period of eight years from date hereof and no longer, and all the timber remaining on said lands at the expiration of the said time shall revert to the grantors, their heirs and assigns.

"The said grantors reserve and except for themselves their heirs and assigns the right to turpentine the pine timber trees upon said lands, and to do all things necessary and convenient for the operation of the turpentine business thereon for the removal of the turpentine products therefrom, but it is understood that the said grantors shall surrender and abandon to the grantee, its successors and assigns, the said land for the purposes of this grant at the rate of three thousand acres upon delivery of this deed, two thousand acres on January 1st, 1904, three thousand acres on January 1st, 1905, three thousand acres on January 1st, 1906, and the balance about one thousand acres on January 1st, 1907.

"It is understood that the grantee, having once begun to cut the pine trees upon a quarter section, shall cut down and remove all the saw logs upon said quarter section before going upon another quarter section, and the failure to do so shall give the grantors the right to stop further cutting until this provision is complied with. * * * "

The bill alleges that the defendant acquired all his rights to the timber involved by virtue of this lease to the Loxley Lumber Company; that the original lessee had exercised all the privileges under the contract, and had entered upon the land and cut and removed the pine saw logs therefrom quarter section by quarter section, in conformity with the terms of the lease.

The defendant contends that the comprehensive terms of the deed embrace every kind of timber and wood on the land save that expressly excepted; that, by reason of the term of years given to cut and remove the timber, one entry would not exhaust the right to enter and remove wood other than pine trees; that a reversion could only occur at the expiration of the term, and one entry would not work a forfeiture because of the reserved right of the grantors to compel compliance with the requirements of the lease for cutting quarter section by quarter section; that a return to cutting might result as a waiver of the strict terms of the contract. What was intended to exhaust the lessee's right of entry and cutting under this lease is not free from difficulty. What was sold by the terms of this grant? All the timber of whatsoever kind and nature standing or being upon the land. When and how was it to be utilized by the purchaser? It will be observed that the lessors reserved the right to operate the pine timber concurrently for naval stores and the pine timber should be surrendered or turned over to the lumber company at definite periods in tracts of 3,000 acres. It is also expressly stipulated that, when cutting pine trees should once begin, it should continue "quarter section" at a time until the saw logs on that subdivision should be cut and removed before entering upon another quarter section. This limitation upon the right of the lessees to cut and remove the pine trees was obviously

intended to avoid such interference as indiscriminate cutting would produce to the successful operation of the trees for turpentine purposes at the same time, and the destruction of the boxed trees by worms communicated by felled and decaying timber. Therefore it is a reasonable interpretation of the intention of the parties to the original contract to say that it embraced all the timber of every kind and description on the land, except the specified cypress trees, without reference to size or condition. Eight years were allowed the lessee for utilizing the timber purchased under the prescribed terms of removal.

A review of the cases deciding like questions discloses a wide conflict of authority as to whether one purchasing growing timber under a contract limiting the time within which it must be removed loses title to all the timber not removed within that time. Several Michigan cases construing timber reservations in deeds to land have been cited by counsel in support of defendant's contention that, under this contract, the cutting of any timber on such quarter section in the absence of a forfeiture clause would not defeat his title to the fallen timber or other wood; that his title to the timber was absolute, and the lapse of time provided for the cutting would not divest the title thereto. Hodges v. Buell, 134 Mich. 162, 95 N. W. 1078; Buckwalter v. Hutcherson (Ky.) 66 S. W. 603. But on this phase of the contract we have fortunately the benefit of the light of an interpretation of our own (Florida) Supreme Court, construing this identical contract. Wefel v. Williams & Pritchett, 58 Fla. 538, 50 South. 679. That court did not find in the instrument any limitation upon the right to turpentine, but a "period only" in which the grantee was to enjoy the privilege for a limited time of entering and cutting the timber provided it was done "according to the conditions of the contract." It necessarily followed in the view of the court with this restriction on the manner of cutting that "large equities remained in the grantor."

In the light of this construction, I am inclined to the view that the purport of the original contract was a conveyance of a present estate in all the timber on the land defeasible as to all the timber standing, and being on the land at the expiration of the lease. The limitation is only as to time and the way the pine trees were to be removed by the grantee. It appears that by the efflux of time the entire tract of 9,000 acres are available, subject as ever to the original restriction imposed when the "grantee, having once begun to cut the pine trees upon a quarter section, shall cut down and remove all the saw logs on said quarter section before going upon another quarter section." The question whether or not the grantee has or has not complied with the requirements of the contract to cut by quarter section, or has exhausted his rights to cut more, by having once exercised that privilege, will depend for its determination upon the proofs yet to be submitted in the cause. The reserved rights of the grantors to stop further cutting until the provision for cutting by quarter section should be complied with would seem of itself to preclude any forfeiture of grantee's right to the timber. For aught that is so far disclosed, the cutting of the timber in the prescribed manner may have been waived by the grantors. That the right of entry may not have

been exercised may be due to the wrong or default of the grantor. These matters will be reserved for final hearing.

The restraining order heretofore granted shall be enlarged in part and continued in part for further hearing upon the evidence. Pending further hearing the defendant, Long, and his agents, will be enjoined from cutting and removing pine trees on more than one quarter section at the same time, and that he desist from cutting pine trees upon any other quarter section of the land embraced in the lease until all the pine trees shall have been cut and removed from the quarter section on which cutting may have begun.